UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES SCOTT DAILY,

                          Plaintiff,

v.                                          7:14-CV-1559
                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

CONBOY, MCKAY, BACHMAN                      PETER L. WALTON, ESQ.
& KENDALL, LLP
  Counsel for Plaintiff
407 Sherman St.
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.                 LAUREN MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 10.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by James Scott

Daily ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 8, 9.) For the reasons set forth

below, it is recommended that Plaintiff's motion be granted, in the extent it seeks

remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 29, 1965. (T. 57.) He graduated high school. (T.

198.) Generally, Plaintiff's alleged disability consists of degenerative disc disease

("DDD"), arthritis, spinal stenosis, lumbar spine strain, and depression. (T. 197.) His

alleged disability onset date is July 22, 2011. (T. 146.) His date last insured is

September 30, 2015. (T. 13.)[1] He previously worked in retail, as a custodian, and as a

bartender/cook. (T. 198.)

### B. Procedural History

On October 3, 2011, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act. (T. 193.) Plaintiff's applications were initially denied, after which he

timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March

6, 2013, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 26-56.) On

April 24, 1013, ALJ Koennecke issued a written decision finding Plaintiff not disabled

under the Social Security Act. (T. 7-25.) On November 5, 2014, the Appeals Council

("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial

review in this Court.

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as September 30, 2014; however, this issue is not disputed. (T. 57.)

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2015 and Plaintiff had not engaged in substantial gainful activity since July 22, 2011. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairment of DDD of the lumbar spine. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work and could occasionally stoop, kneel, crouch, crawl, and bend. (*Id.*)[2] The ALJ further determined Plaintiff should avoid moderate exposure to hazards of machinery and heights, and avoid concentrated exposure to wetness, vibration, and extreme cold. (*Id.*) The ALJ determined that Plaintiff's need to alternate between sitting and standing could be accommodated during routine breaks. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 19-20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

In his brief, Plaintiff argues 1) the Commissioner's findings must be supported by substantial evidence, 2) the ALJ substituted her own judgment for competent medical

---

[2]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

opinion, 3) the Commissioner failed to properly evaluate and give controlling weight to Plaintiff's primary treating physicians, 4) the Commissioner failed to properly consider and evaluate Plaintiff's pain, physical limitations and other symptoms in making her determination and 5) the Commissioner failed to properly assess Plaintiff's RFC. For ease of analysis Plaintiff's arguments will be addressed in a consolidated fashion. Plaintiff essentially makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (Dkt. No. 8 at 13-18, 21-24 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ failed to properly assess Plaintiff's credibility. (*Id*. at 18-21.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (Dkt. No. 9 at 5-12 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's credibility analysis was proper. (*Id*. at 12-14.) Third, and lastly, Defendant argues remand for calculation of benefits was not warranted. (*Id*. at 14-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.      The ALJ's RFC Determination and Treatment of Medical Opinion Evidence in the Record

An individual's RFC is his ability to do physical and mental work activities on a

sustained basis despite limitations from his impairments.  In making an RFC

determination, the ALJ must consider all of Plaintiff's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. Plaintiff's RFC is not the least he can do despite his limitations or restrictions, but the most. SSR 96-8p (S.S.A. July 2, 1996).

In making her RFC determination the ALJ relied on the medical opinion evidence in the record; specifically, the ALJ afforded "significant weight" to the opinions of the consultative examiner, Gautam Arora, M.D.; State agency medical consultant, Neal Bente, M.D.; and treating orthopedist, Steven Fish, M.D. (T. 19.) However, the ALJ afforded Dr. Fish's medical opinion concerning non-exertional impairments, "little weight." (*Id.*) The medical record also contained a medical source statement and treatment notations from Plaintiff's treating physician, Gerald Calabrese, M.D. Although the ALJ did not assign a specific weight to the medical source opinion supplied by Dr. Calabrese, the ALJ appeared to afford the opinion at most some weight. (*Id.*)

On December 28, 2011, Plaintiff underwent a consultative examination performed by Dr. Arora. (T. 296.) Dr. Arora observed Plaintiff walked with an antalgic gait. (T. 297.) Dr. Arora observed Plaintiff could squat, had full range of motion in his cervical spine, had decreased range of motion in his lumbar spine, had positive straight leg raises[3] on the right, had full range of motion in his upper extremities, and full range of motion in his lower extremities. (T. 297-298.) Dr. Arora observed Plaintiff showed no neurologic deficits and had full strength in his upper and lower extremities. (T. 298.)

---

[3]     The Straight Leg Raising (SLR) test has been used as the primary test to diagnosis lumbar disc herniations and found to have high correlation with findings on operation since its sensitivity is high in only disc herniations leading to root compression that may eventually need operation. *The sensitivity and specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation.,* National Center for Biotechnology Information (Feb. 26, 2016), http://www.ncbi.nlm.nih.gov/pubmed/18391677

Dr. Arora opined in a medical source statement that Plaintiff had "marked limitation of bending, twisting" and "moderate limitation of lifting and carrying." (*Id.*)

On May 10, 2012, State agency medical consultant, Dr. Bente, completed a physical RFC assessment. (T. 313.) In terms of exertional limitations, Dr. Bente opined Plaintiff could perform the requirements of sedentary work. (T. 314.) However, Dr. Bente opined Plaintiff must periodically alternate sitting and standing. (*Id.*) Dr. Bente elaborated on this opinion, stating Plaintiff would need to alternate between sitting and standing every half hour for five minutes. (T. 315.) In terms of non-exertional limitations, Dr. Bente opined Plaintiff could occasionally: climb, kneel, crouch, and crawl. (T. 316.) Dr. Bente opined Plaintiff could never balance and could frequently stoop. (*Id.*) Dr. Bente opined Plaintiff should avoid concentrated exposure to extreme cold, wetness, vibration and avoid even moderate exposure to hazards. (*Id.*)

Dr. Fish did not provide a medical source statement; however, he did give an opinion as to Plaintiff's work related functional limitations. On November 1, 2011, Dr. Fish opined Plaintiff could not bend, squat, or climb. (T. 292.) He further opined Plaintiff could not lift more than ten or 15 pounds. (*Id.*) In a letter dated December 21, 2011, Dr. Fish responded to an inquiry from the NYS Office of Temporary Disability and Assistance regarding his November 11, 2011 notations. (T. 295.) Therein, Dr. Fish reiterated the limitations he imposed on Plaintiff and further stated that Plaintiff could sit if he was allowed to change positions frequently. (*Id.*) Dr. Fish stated Plaintiff could stand and walk periodically, and he noted Plaintiff moved in a guarded fashion during his physical exam. (*Id.*)

On September 24, 2012, Plaintiff's treating physician, Dr. Calabrese, completed a medical source statement. (T. 348.) Therein, Dr. Calabrese opined Plaintiff could occasionally lift and carry ten pounds, and could frequently lift and carry less than ten pounds. (*Id.*)[4] Dr. Calabrese opined Plaintiff could stand and/or walk less than two hours in an eight hour workday. (*Id.*) Dr. Calabrese opined Plaintiff could sit less than six hours in an eight hour workday. (T. 349.) He opined Plaintiff's ability to push and pull with his lower extremities was affected by his impairments. (*Id.*) Dr. Calabrese noted that his conclusions, regarding Plaintiff's exertional limitations, were supported by "history from [Plaintiff]." (*Id.*) Dr. Calabrese opined Plaintiff had additional non-exertional limitations. Specifically, Dr. Calabrese stated Plaintiff could never climb, balance, or crawl. (*Id.*) He opined Plaintiff could occasionally kneel and could frequently crouch and stoop. (*Id.*)

Plaintiff argues the ALJ failed to properly weight the medical opinion evidence supplied by Drs. Fish and Calabrese and instead substituted her own lay opinion for that in the record. (Dkt. No. 8 at 13-18, 21-24 [Pl.'s Mem. of Law].)

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the

---

[4] The form completed by Dr. Calabrese defines "frequently" as occurring one-third to two-thirds of an eight hour workday and "occasionally" as occurring from very little up to one-third of an eight hour workday. (T. 348.)

treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff first argues the ALJ erred in her assessment of Dr. Fish's opinion because she provided "no specific evidence" to support her conclusion that Dr. Fish's opinion regarding Plaintiff's inability to bend, squat or climb, was based on "subjective complaints" and therefore entitled to "little weight." (Dkt. No. 8 at 16 [Pl.'s Mem. of Law].) Defendant argues that the ALJ properly afforded "little weight" to Dr. Fish's non-exertional limitations because they were inconsistent with other medical evidence in the record. (Dkt. No. 9 at 9 [Def.'s Mem. of Law].)

The ALJ afforded Dr. Fish's opinion that Plaintiff could not bend, squat, or climb "little weight" because "it appear[ed] to be based on [Plainiff's] subjective complaints." (T. 19.) The ALJ offered no other reason for affording "little weight" to this portion of Dr. Fish's opinion.

To be sure, the Second Circuit has reasoned that a treating source's opinion which is based primarily on a plaintiff's subjective complaints, rather than the treating source's medical observations, can be afforded less weight. *See Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (affirming ALJ's determination that VA finding of 70% disability "relied heavily on [plaintiff's] subjective complaints rather than objective medical evidence."); *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) ("Much of

what [plaintiff] labels medical opinion was nor more than a doctor's recording of [plaintiff's] own reports of pain."); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's decision to give less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably found to be less than fully credible). Here, however, there is no indication that Dr. Fish based his non-exertional limitations on Plaintiff's subjective complaints.

Dr. Fish opined to Plaintiff's work related limitations after conducting a thorough medical examination. (T. 291-292.) During his examination Dr. Fish noted Plaintiff was in no acute distress, moved in a guarded fashion, had right sided back tenderness on palpation, had positive straight leg raises, and had full strength. (T. 291.) During that examination Dr. Fish also review objective medical imaging which indicated "some central canal stenosis at L3-4 and L4-5 disc bulging and small central disc herniation." (*Id.*) Dr. Fish recommended Plaintiff be seen by Howard Huang, M.D. for epidural injections and prescribed Plaintiff medication to help with pain and muscle spasms. (T. 292.) The record therefore indicated that Dr. Fish based his limitations on his physical examination and review of objective medical evidence.

In response, Defendant argues that the ALJ properly afforded Dr. Fish's non-exertional limitations "little weight" because the limitations were inconsistent with other opinion evidence in the record. (Dkt. No. 9 at 9 [Def.'s Mem. of Law].) However, the ALJ did not reason Dr. Fish's statement were inconsistent with other medical evidence in the record, the ALJ only reasoned the limitations were based on subjective complaints. (T. 19.) This Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the

Commissioner's decision itself." *Martinbeault v. Astrue*, 2009 WL 5030789, *5

(N.D.N.Y. Dec. 14, 2009) (citing *Grogan v. Barnhart,* 399 F.3d 1257, 1263 (10th Cir.

2005)); *see also Snell,* 177 F.3d 134 (quoting *Burlington Truck Lines, Inc. v. United

States,* 371 U.S. 156, 168 (1962)); *see also Melville v. Apfel,* 198 F.3d 45, 52 (2d

Cir.1999).

In addition, although the objective medical evidence was not entirely consistent

with Dr. Fish's limitations, that was not a conflict to be resolved by this Court.  Dr. Fish

limited Plaintiff to no bending (T. 295) and Dr. Arora opined Plaintiff had "marked

limitations" in his ability to bend (T. 298); however, Dr. Calabrese opined Plaintiff could

"frequently" stoop (T. 349).[5]  Plaintiff's chiropractor, Tomm Maxon, D.C., opined Plaintiff

had "moderate" limitations in bending and required a sit/stand option at work.  (T. 277.)

The weight of the evidence appears to indicate Plaintiff had greater limitations in his

ability to bend than the "occasional" ability afforded in the ALJ's RFC determination.

However, it is the function of the ALJ, not the reviewing courts to resolve evidentiary

conflicts. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.

1982).

In addition, any error regarding Plaintiff's ability to perform non-exertional

limitations cannot be construed as harmless.  SSR 96-9p states: "[a]n ability to stoop

occasionally; i.e., from very little up to one-third of the time, is required in most unskilled

sedentary occupations. A complete inability to stoop would significantly erode the

unskilled sedentary occupational base and a finding that the individual is disabled would

usually apply, but restriction to occasional stooping should, by itself, only minimally

---

[5]        Stoop is defined as bending at the spine alone.  SSR 85-15.  Of note, the term "stoop"
was not defined on Dr. Calabrese's medical source statement.

erode the unskilled occupational base of sedentary work."  Therefore, an RFC determination and ultimately a proper step five determination, cannot be determined until Plaintiff's non-exertional limitations are properly assessed based on the medical opinion evidence in the record.

In general, in discrediting Dr. Fish's non-exertional limitations based only on subjective complaints, the ALJ ignored the Regulations which direct an ALJ, when not affording controlling weight, to consider: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ did not discuss Dr. Fish's opinion in the context of any of those factors, thus further requiring remand.  Additionally, the ALJ failed to follow any other steps in the process outlined in 20 C.F.R. § 404.1527(c), 416.1527(c). *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015) (remanding where the ALJ failed to explicitly consider any of the factors for determining the weight given to a non-controlling opinion under 20 C.F.R. § 404.1527(c)(2)(i),(2)(ii),(3)–(6)).

Therefore, the ALJ improperly dismissed a portion of Dr. Fish's opinion, reasoning it was based on subjective complaints, because there is no evidence in the record to support this conclusion.  Further, the ALJ failed to assess Dr. Fish's opinion according to the factors outlined in the Regulations.  Therefore, remand is recommended for a proper evaluation of Dr. Fish's opinion, specifically regarding his non-exertional limitations.[6]

---

[6]    Plaintiff also makes a separate argument that the ALJ erred in evaluating Dr. Fish's opinion because she "speculated" the opinion was based on subjective complaints.  (Dkt. No. 8 at 14

13

Plaintiff next argues the ALJ erred in her evaluation of Dr. Calabrese's opinion. (Dkt. No. 8 at 17 [Pl.'s Mem. of Law].)  Plaintiff argues the ALJ failed to afford the opinion a specific weight and failed to provide any support for her treatment of Dr. Calabrese's opinion.  (*Id.*)  To be sure, an ALJ need not assign a specific weight to a medical opinion, so long as the Court is able to discern the ALJ's reasoning.  *Curtis v. Colvin*, No. 11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court is able to discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed").  Here, the Court cannot "discern with ease" the ALJ's reasoning in her treatment of Dr. Calabrese's medical source opinoin.

In her discussion of Dr. Calabrese's opinion, the ALJ stated the opinion "appeared to be based on [Plaintiff's] subjective complaints."  (T. 19.)  As already stated, an ALJ may provide reduced weight to an treating source's opinion if that opinion is based primarily on Plaintiff's subjective complaints; however, here the ALJ rejects the whole of the opinion based on that reasoning alone.  (*Id.*)  As with her treatment of Dr. Fish's opinion, the ALJ failed to discuss Dr. Calabrese's opinion in the context of any of the factors in the Regulations. To be sure, the courts require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear. *See Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir.2004). Here however, the ALJ's reasoning is not clear.

---

[Pl.'s Mem. of Law].)  This argument is essentially identical to Plaintiff's argument that the ALJ erred her analysis of Dr. Fish's opinion under the Regulations.  (*Id.* at 15-18.)  For the reasons stated herein, remand is recommended for a proper of analysis of Dr. Fish's opinion in accordance with the Regulations, therefore this Court need not address the argument again.

The ALJ's discussion of the medical evidence in the record and the weight afforded to the evidence was limited to a single paragraph and was conclusory at best. The ALJ appears to dismiss those opinions she does not agree for the single, unsupported reason that the opinions were based on subjective complaints. (T. 19.)

The ALJ does cite to specific medical evidence in the record in an apparent attempt to support her determination; however, the ALJ's synopsis was overly narrow and failed to provide an accurate picture of the medical evidence as a whole. The ALJ stated that "physical examinations show no neurological or strength deficits" and an EMG study indicated "mild findings." (T. 19.) First, the ALJ appears to read "mild findings" as equivalent to "no findings." Second, although physical examinations showed no neurological or strength deficits, nearly all of the physical examinations in the record showed positive straight leg raises and noted an antalgic gait.

Plaintiff presented to urgent care in July of 2011 after injuring his back at work. (T. 250.) The physician who examined Plaintiff noted he walked with a Trendelenburg gait. (T. 251.) Plaintiff presented at urgent care again in August of 2011, and the physician noted positive straight leg raises. (T. 254.) In September of 2011, Dr. Fish noted Plaintiff had an "exceedingly stiff gait" which made it difficult for Plaintiff to move. (T. 288.) Dr. Fish again noted Plaintiff "move[d] in a guarded fashion" and had positive straight leg raises on November 1, 2011. (T. 291.) On November 21, 2011, Dr. Huang noted Plaintiff's gait was a "little bit guarded" and Plaintiff had positive straight leg raises. (T. 327.) Dr. Fish observed on December 8, 2011, that Plaintiff sat to his side in order to take weight off of the right side of his body. (T. 329.) Dr. Fish also observed at that time that Plaintiff needed to frequently change positions. (*Id.*) On January 9, 2012,

Dr. Fish noted positive straight leg raises, he noted Plaintiff had difficulty standing, walking, and had to change positions. (T. 331.) On February 13, 2012, Dr. Baird noted Plaintiff "ambulate[d] with significant favoring of his right lower extremity unassisted, antalgic." (T. 333.) He also noted positive straight leg raise but "otherwise negative hard neurological evidence." (*Id.*) On April 25, 2012, Plaintiff "ambulated slow" and straight leg raises caused "significant hamstring tension." (T. 337.)

In August of 2012, Dr. Calabrese observed Plaintiff was in acute distress, was uncomfortable in one position for long, and had positive straight leg raises. (T. 345-347.) On January 17, 2013, Dr. Calabrese noted Plaintiff was in tears, appeared restless and uncomfortable. (T. 360.)

On February 28, 2013, Marco Berard, M.D. conducted an independent medical exam for Plaintiff's Worker's Compensation claim. (T. 264.) He noted Plaintiff had "strong" positive straight leg raises. (*Id.*) Bhupinder Bolla, M.D., with the Samaritan Medical Center Pain Clinic, noted Plaintiff had pain with straight leg raises and walked with an antalgic gait. (T. 355.)

Therefore, the record is rife with objective medical evidence that could reasonably support the treating sources additional non-exertional limitations. "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Here however, the Court is unable to "glean" the

ALJ's rationale because the ALJ's decision failed to discuss many of the findings in the record.

The ALJ erred in her evaluation of Plaintiff's providers on the ground that their opinoins were based on "subjective complaints" because the record contained objective medical evidence and treatment notation to support the treating physicians' opinions. *See Castano v. Astrue*, 650 F. Supp. 2d 270, 278 (E.D.N.Y. 2009) (remanding where the ALJ rejected opinions of treating physicians on the grounds that they were based on "subjective complaints" where treating physician's reviewed objective medical imaging and examined plaintiff).

As stated herein, there was no indication that Dr. Fish based his opinion on Plaintiff's subjective complaints alone. Further, although Dr. Calabrese stated he based his opinion on "history from [Plaintiff]," he conducted thorough medical examinations as well. All of Plaintiff's treating physicians reviewed X-rays and MRIs, conducted complete physical examinations, and noted similar symptomology. Remand is recommend so that the ALJ may provide a thorough discussion of all the evidence in the record, properly evaluate the opinions of Plaintiff's treating physician's under the factors outlined in the Regulations, and provide an analysis of Plaintiff's non-exertional limitations.

### B.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (T. 17.) The ALJ reasoned Plaintiff's statements were not supported by medical and other evidence in the record. (*Id.*) The ALJ relied on observations made during the consultative exam, findings from Plaintiff's EMG results, and MRI results. (*Id.*) The ALJ further reasoned Plaintiff was less credible because he failed to follow his treating physician's recommendation to see a neurosurgeon, and Plaintiff's activities of daily living were inconsistent with his testimony. (T. 17-18.)

Plaintiff argues the ALJ erred in her credibility analysis; specifically, the ALJ misread the evidence regarding Plaintiff's referral to a neurologist and the ALJ erred in her conclusion regarding Plaintiff's need for a cane. (Dkt. No. 8 at 20-21, 24 [Pl.'s Mem. of Law].) Defendant counters that the ALJ's credibility analysis was proper. (Dkt. No. 9 at 12-14 [Def.'s Mem. of Law].)

For the reasons stated in Part IV.A., remand is recommended for a proper evaluation of the medical evidence in the record. Because objective medical evidence is a vital factor in the credibility analysis, remand is also recommended for a new credibility analysis in light of a proper evaluation of the medical evidence.

Regarding Plaintiff's specific argument, that the ALJ misread the evidence regarding Plaintiff's failure to seek prescribed treatment, this Court agrees with Plaintiff. The record indicated that on January 17, 2012, Dr. Calabrese noted "neurosurgeons in Syracuse awaiting to see [Plaintiff]" (T. 360) and on March 12, 2013 noted Plaintiff "got in touch with neurosurgeon in Syracuse" and "they wanted MRI prior to [appointment]"

(T. 370). On March 12, 2013, Dr. Calabrese ordered an MRI. (T. 369.) The medical recorded ended with Dr. Calabrese's March 12, 2013 appointment notation. At the hearing on March 6, 2013, Plaintiff indicated that he would undergo surgery if Worker's Compensation would approve it. (T. 52.)

There was simply not enough information in the record at the time the ALJ wrote her decision to make the determination that Plaintiff failed to follow prescribed treatment. The record up to the time of the decision only indicated Plaintiff was in the process of seeing a neurosurgeon and was taking the proper steps, such as obtaining an MRI, before doing so.

Plaintiff's statements may be less credible:

if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7P (S.S.A. July 2, 1996). However, the record ends before there is enough evidence to draw the conclusion that Plaintiff failed to follow prescribed treatment. Up to March 12, 2013, the record indicated that Plaintiff was following up on seeing a neurosurgeon. Plaintiff informed his treating physician that he had contacted a neurosurgeon; however, the neurosurgeon requested an MRI, which Dr. Calabrese ordered. (T. 367.) Any conclusion, either that Plaintiff followed through with treatment or not, is pure speculation. Therefore, the ALJ erred in her conclusion that Plaintiff failed to follow-up on recommendations to see a neurosurgeon.

Plaintiff also argues the ALJ failed to properly evaluate Plaintiff's need for a cane to ambulate effectively. (Dkt. No. 8 at 24 [Pl.'s Mem. of Law].) In order "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96–9p (S.S.A. 1996). Courts have held that the burden to establish medical necessity for the use of an assistive device rests with a claimant. *Dahl v. Comm'r of Soc. Sec.,* No. 12-CV-0302, 2013 WL 5493677, at *5 (N.D.N.Y. Oct. 1, 2013) (citing *Howze v. Barnhart,* 53 F. App'x 218, 222 (3d Cir.2002)).

Here, Plaintiff failed to establish his need for a cane. Plaintiff cites to the record indicating Plaintiff's gait was antalgic; however, this alone does not establish the need for a cane. "The precise documentation that a claimant must provide is not yet well-established in case law, but jurisprudence from within and outside this circuit indicate that the bar is high; it must unambiguously match all of the SSR 96–9p's detailed criteria." *Dahl,* 2013 WL 5493677, at *5. Therefore, the ALJ did not err in her evaluation of Plaintiff's use of a cane. However, remand is still recommended for a complete credibility analysis because the ALJ erred in her evaluation of the medical evidence in the record, which affected her credibility determination. Further, the ALJ specifically erred in her credibility analysis in faulting Plaintiff for not following through with prescribed treatment where the record does not support such a conclusion.

### C.     Remand for Further Proceedings

Plaintiff requests judgment with the determination that Plaintiff was disabled, or in the alternative, further proceedings. (Dkt. No. 8 at 25 [Pl.'s Mem. of Law].) Calculation of benefits is appropriate only where the "record provides persuasive proof of disability and remand for further proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). For the reasons stated herein, remand is recommended; however, the evidence is not such that it provided persuasive proof of disability. Therefore, remand for calculation of benefits is not warranted, but instead, remand is recommended for further proceedings.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        February 29, 2016

William B. Mitchell Carter
U.S. Magistrate Judge